# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CHERYL LEWIS,

            Plaintiff,     :     Case No. 3:15-cv-11

   - vs -                                     Magistrate Judge Michael R. Merz

NAVISTAR INTERNATIONAL TRUCK 7,

            Defendant.     :

## DECISION AND ORDER

This case is before the Court on Defendant's Motion for Summary Judgment (ECF No. 21), Plaintiff's Reply in Opposition (ECF No. 22), and Defendant's Reply in Support (ECF No. 23).

The parties unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c)(ECF No. 16) and District Judge Rice referred the case on that basis (ECF No. 17).

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

1

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;  the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).  Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law.  Fed. R. Civ. P. 50).  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).  If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate.  *Id*.  The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). "The mere

possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)(*quoting Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F.3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

> The moving party
>
>> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323; *see also, Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F. 2d 606 (6th Cir. 1992).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether

3

a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

The facts set forth in this Decision are admitted or established by evidence competent under Fed. R. Civ. P. 56(e) and not controverted by opposing competent evidence. Evidence tendered with respect to the Motion includes Plaintiff's deposition ("Lewis Depo.," ECF No. 21-2, PageID 82-124); the declaration of Carol Wyatt ("Wyatt Decl.," ECF No. 21-3, PageID 126-36); and the excerpts from the deposition of Carol Wyatt ("Wyatt Depo.," ECF No. 21-4, PageID 138-50).

## Analysis

Plaintiff Cheryl Lewis brought this action against her former employer, Navistar, alleging discrimination in employment on the basis of race in violation of Title VII of the 1964 Civil Rights Act (First Claim for Relief), discrimination against a person with a disability in violation of the Americans with Disabilities Act (the "ADA") (Second Claim for Relief), maintenance of a hostile work environment in violation of both Title VII and the ADA (Third Claim for Relief), wrongful termination in violation of Navistar's company policy (Fourth Claim for Relief), and violation of public policy (Fifth Claim for Relief)(Complaint, ECF No. 1, PageID 2-4). These claims will be analyzed separately.

**Title VII**

Plaintiff is an African-American woman who was terminated from her assembly line job at Navistar, which is a manufacturer of trucks and similar vehicles. She was hired as an assembler in July 1994 at Navistar's Springfield plant and moved to Navistar's Urbana plant in 2002. Plaintiff was a member of United Auto Workers Local 402 which represented employees at Navistar's Urbana facility.[1]

Navistar asserts it has an Equal Employment Opportunity Policy that prohibits discrimination and harassment. Its Motion references this document as an exhibit to Ms. Lewis' deposition (ECF No. 21, PageID 62). Although page 3[2] (PageID 83) of the deposition references nine exhibits identified during the deposition, none are attached to the filed copy. A document with that title is attached to the Wyatt Declaration (ECF No. 21-3, PageID 129-32).

In 2005 five Navistar employees were shot to death at Navistar's Melrose Park, Illinois, plant. As a result Navistar adopted a stringent Workplace Violence Prevention policy which made clear that an act or threat of violence was grounds for termination as well as reference for criminal prosecution. Plaintiff admitted at her deposition that she was aware of the Melrose Park incident and the policy and that she had participated in training on the policy. Allegations of violation of the policy are supposed to be individually investigated; credible allegations typically result in termination (Wyatt Depo., ECF No. 21-4, P. 8, PageID 139).

---

[1] Presumably there was a collective bargaining agreement that covered Plaintiff's employment. If that were so, it would have legal consequences relating to the employment. Because neither party has raised the issue and Defendant has not mentioned the CBA in its motion papers, the Court attributes no legal significance to its probable but unmentioned existence.

[2] Because the depositions have been filed in manuscript format, references herein will be to the page given by the court reporter and the PageID number provided by the Court's CM/ECF filing system.

During her deposition, Plaintiff detailed the history of her difficulties with co-worker Sue Hartley (summarized at Motion, ECF No. 21, PageID 63-64 and Plaintiff's Reply, ECF No. 22, PageID 152-55). Ms. Lewis complains of harassing behavior from Ms. Hartley continuing over a number of years (Lewis Depo., ECF No. 21-2, P. 56, PageID 96). During one incident a Navistar Human Resources officer, Neal Moses, directed Ms. Hartley and Ms. Lewis to sit in a room and talk their problems out, but Ms. Hartley refused to talk. After that occasion, Ms. Hartley continued to harass Ms. Lewis. On one occasion when Ms. Lewis was crying as a result of the taunting, Ms. Wyatt referred her to the Navistar Employee Assistance Program (Lewis Depo., ECF No. 21-2 pp. 81-84, PageID 102-103).

In September 2013 Ms. Lewis was in a work position she believed would cause she and Ms. Hartley to bump into one another. She asked to move her desk "further down the line." Supervisor Jim Crace initially gave permission, but revoked it the same day. *Id.* at pp. 93-94, PageID 105-106.

The Human Resources employee responsible for dealing with the results of this interaction was Senior Generalist Carol Wyatt. On October 3, 2013, a black co-worker named Raymond Smith told Wyatt that he had heard Plaintiff say "a few times that she wanted to murder Hartley." (Wyatt Depo., ECF No. 21-4, pp. 27-28, PageID 142.) While Supervisor Jim Crace told Wyatt he had not heard Plaintiff make any threats, in the week before October 3 he had seen "Plaintiff pacing the floor, rambling, talking to herself, and answering her own questions," as well as not remaining in her own workstation (Wyatt Depo, ECF No. 21-4, pp. 33-34, PageID 144). Having heard these reports, Wyatt believed that Plaintiff had made the threat and terminated her employment (Lewis Depo., pp. 25, 101, PageID ___, ___).

Ms. Lewis apparently believes Smith had a motive to fabricate his story about her death threats because they had been work partners, but he did not do his job and she eventually reported him to union Unit Committeeman Kevin Hunter (Lewis Depo., pp. 48, 100, PageID 94, 107).

Ms. Wyatt made the termination decision and is the allegedly discriminating person. In addition to terminating Ms. Lewis, she also terminated Ryan Hooper (Caucasian) for threatening to punch a supervisor  (Wyatt Depo., ECF No. 21-4, pp. 17, 61, PageID 141, 149). Prior to his termination, Hooper had never been disciplined under Navistar's Workplace Violence Policy (Wyatt Depo., ECF No. 21-4, P. 18, PageID 141). Wyatt suspended Union Steward Jim Arrington (Caucasian) for telling a supervisor he would "fuck with him." (Wyatt Depo., ECF No. 21-4, pp. 61-62, PageID 149.) Finally, Wyatt terminated Chrissy Sims (African American) for throwing hot water on another employee (Wyatt Depo., ECF No. 21-4, pp. 57-58, 61, PageID 148-149).  Navistar argues this pattern negates Lewis' prima facie case.  However, there is direct testimony in Ms. Lewis' deposition that Hartley made a direct threat to Lewis that she was going to beat Lewis up and it took "three or four guys" to hold her back (Lewis Depo., ECF No. 21-2, p. 56, PageID 96).  This is sufficient testimony to create a triable issue of racial discrimination in discipline.

In a Title VII case, the employee has the initial burden of producing evidence of a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792  (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981);  *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th  Cir. 1991); *Gagne v. Northwestern Nat. Ins. Co*., 881 F.2d 309 (6th  Cir. 1989).  The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, *supra; Burdine*,

*supra.* However, the burden remains on the employee throughout the case to prove by a preponderance of the evidence that he or she was the victim of intentional discrimination. *Burdine*, *supra.*; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

To establish a prima facie case of disparate treatment in discipline, a plaintiff must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees. *Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992); *Davis v. Monsanto Chemical Co.*, 858 F.2d 345 (6th Cir. 1988); *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974). The plaintiff must show that the "comparables" are similarly-situated *in all respects*. *Stotts v. Memphis Fire Department*, 858 F.2d 289 (6th Cir. 1988). To be deemed "similarly situated" in a disciplinary case, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell*, 964 F.2d 577; *citing Mazzella v. RCA Global Communications, Inc.*, 642 F. Supp. 1531 (S.D.N.Y. 1986), *aff'd.*, 814 F.2d 653 (2nd Cir. 1987); *Lanear v. Safeway Grocery*, 843 F.2d 298 (8th Cir. 1988); *Cox v. Electronic Data Systems Corp.*, 751 F. Supp. 680 (E.D. Mich. 1990). The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly situated; rather, they must be similar in "all the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), *citing Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994).

Plaintiff has met the first prong of her Title VII case by showing that she is African-American. She certainly suffered an adverse consequence: termination from employment. She

has also shown that Ms. Hartley, a similarly-situated white worker, made direct threats to her of physical violence but was not disciplined.  A jury could reasonably find on the basis of this evidence that the asserted Workplace Violence Policy basis for the termination was pretextual.

Ms. Lewis' claim about the furnishing of full toolboxes to white employees and the failure to do the same to black employees is not in itself actionable because it does not represent an adverse employment action in Ms. Lewis' case.  It may provide corroborative evidence at trial.

Navistar's Motion for Summary Judgment as to Ms. Lewis' Title VII claim (First Claim for Relief) is DENIED.

**Americans with Disabilities Act**

In her Second Claim for Relief, Plaintiff seeks to recover under the American with Disabilities Act.  In the Complaint, she alleges

> 19. That Defendant was fully aware the Plaintiff suffered from a condition that made her susceptible to "baiting", "prodding" and other negative actions from some of her co-workers.
>
> 20. That instead of placing the Plaintiff in a department away from agitators that exploited this condition the Defendant placed the Plaintiff in closer proximity to various individuals who intentionally provoked the Plaintiff.
>
> 21. That the Defendant's actions in ignoring the Plaintiff's condition and continuing to place her around individuals whom the Plaintiff had a hard time working with placed the Defendant in a position of feeling like she was being punished.

(ECF No. 1, PageID 3.)

At her deposition, Plaintiff admitted that she did not have a disability and never made her employer aware of any disability (Lewis Depo., ECF No. 21-2, pp. 50, 136, PageID 95, 116). If Plaintiff neither had a disability of which she advised her employer nor was perceived to have a disability, she cannot recover under the ADA. Navistar's Motion for Summary Judgment as to the Second Claim for Relief is GRANTED.

**Hostile Work Environment**

In her Third Claim for Relief, Plaintiff asserts that "as a direct and proximate result of the Defendant's violations of Title VII and the ADA Plaintiff was subjected to a hostile work environment, [in that] Defendant knew or should have known the Plaintiff was being 'bullied' by other co-workers, which included being laughed at en masse, talking about the Plaintiff behind her back and baiting Plaintiff." (Complaint, ECF No. 1, PageID 3.)

Navistar seeks dismissal of this claim for relief on the basis that Plaintiff admits she does not have a disability and there is virtually no racial content to the allegedly harassing behavior (Motion, ECF No. 21, PageID 72). Plaintiff makes no response regarding this claim for relief (See Reply, ECF No. 22, passim). Navistar's Motion for Summary Judgment on the Third Claim for Relief is GRANTED.

**Breach of Company Policy**

In her Fourth Claim for Relief, Ms. Lewis claims she was terminated in violation of company policy in that her termination was based "strictly on hearsay and no substantive

10

investigation was initiated to determine the validity of the allegation." (Complaint, ECF No. 1, PageID 4.)

Navistar initially reads this as a breach of contract claim (Motion, ECF No. 21, PageID 74). The Court does not read the Complaint as making a breach of contract claim – the words "contract" or "agreement" are not used. In any event, the motion papers indicate Ms. Lewis was represented in her employment by the United Auto Workers Union. Any suit for breach of the collective bargaining agreement would have to be brought by the union itself. To put it another way, an individual employee does not have a direct cause of action for violation of the collective bargaining agreement. The Supreme Court has held that

> the pre-emptive force of §301 [of the LMRA] is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of §301.

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983)(footnote omitted), *quoting*, 29 U.S.C. § 185(a).

Navistar also defends on the basis that Ms. Lewis was unable to identify a relevant company policy at her deposition (Motion, ECF No. 21, PageID 74, citing Lewis Depo., ECF No. 21-2, p. 153, PageID 120). Plaintiff responds with the assertion that "when there is a concern about an employee's mental and emotional behavior it is the normal protocol to refer them to EAP [employment assistance program]." (Plaintiff's Reply, ECF No. 22, PageID 166, citing Wyatt Depo., ECF No. 21-4, p. 36, PageID 144.) Furthermore, Navistar's policy requires investigation when threats are alleged, but "Defendant failed to adequately investigate the complaint against Ms. Lewis . . . ." *Id.,* citing Wyatt Depo., ECF No. 21-4, p. 8, PageID 139.)

11

Ultimately Plaintiff's Fourth claim for Relief falters on her failure to show that a violation of company policy is actionable. Even in its reply, Navistar treats this as if it were a breach of contract claim without discussing the collective bargaining agreement. But more fundamentally the law does not make a company's breach of or failure to follow its policy actionable.

Navistar's Motion for Summary Judgment is GRANTED as to the Fourth Claim for Relief.

**Breach of Public Policy**

Plaintiff's Fifth Claim for Relief reads:

> 35. Plaintiff re-alleges paragraphs 1-31 as if rewritten herein and states that as a direct and proximate result of public policy violations stemming from violations of the ADA, Title VII and Hostile Work environment Defendant is liable for damages suffered by the Plaintiff.
>
> 36. That public policy under Title VII, ADA and current case law involving hostile work environment sets out the public policy as employers are expected to adhere.
>
> 3 7. That the Defendant has failed to adhere to public policy and therefore has caused the Plaintiff damages that are compensatory under the foregoing rules of law.

(Complaint, ECF No. 1, PageID 4.)

Navistar asserts that, because Plaintiff's underlying claims under Title VII and the Americans with Disability Act fail, she cannot establish a claim for violation of public policy (Motion, ECF No. 21, PageID 74). Plaintiff responds with one conclusory sentence which cites

12

none of the promised "current case law" (Plaintiff's Reply, ECF No. 22, PageID 166). Navistar's response is equally conclusory (Defendant's Reply, ECF No. 23, PageID 181).

Ohio recognizes a public policy exception to the at-will employment doctrine. *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St. 3d 228 (1990) affirmed and followed; *Tulloh v. Goodyear Atomic Corp.*, 62 Ohio St. 3d 541 (1992).  However, to bring a *Greeley* action, one must be an employee at will; a member of a union cannot do so. *Haynes v. Zoological Society*, 73 Ohio St. 3d 254 (1995).

Navistar's Motion for Summary Judgment as to the Fifth Claim for Relief is therefore GRANTED.

**Conclusion**

Summarizing the results set forth above, Navistar's Motion for Summary Judgment is denied as to the First Claim for Relief and otherwise granted.

August 17, 2016.

s/ *Michael R. Merz*<br>United States Magistrate Judge